IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSEPH LINTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL NO. H-04-4680 |
| | § | |
| JO ANNE BARNHART, | § | |
| Commissioner of the Social | § | |
| Security Administration, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

Pending before the court[1] are Plaintiff's motion for summary judgment (Docket Entry No. 11) and Defendant's motion for summary judgment (Docket Entry No. 13).  The court has considered the two motions, all relevant filings, the administrative transcript, and the applicable law.  For the reasons discussed below, Plaintiff's motion is **DENIED** and Defendant's motion is **GRANTED**.

## I.  Case Background

In this action, Joseph Linton ("Plaintiff") seeks review of an unfavorable final decision issued by the Commissioner of the Social Security Administration ("Commissioner"), in which the Commissioner denied his application for disability insurance benefits under Title II of the Social Security Act ("Act").  Plaintiff filed his application on July 26, 2001, claiming he had been unable to work since April 1, 1992, due to chronic neck pain, right leg weakness,

---

[1]      Plaintiff and Defendant consented to proceed before the undersigned magistrate judge for all proceedings, including hearings and rulings on motions, pretrial conferences and trial, and the entry of judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Docket Entry No. 8, 9.

myelopathy, and paresthesia in his right arm and hand.[2]   The Social
Security Administration ("SSA"), the agency charged with reviewing
a claimant's disability application, denied Plaintiff's application
both initially[3] and upon reconsideration.[4]   Thereafter, Plaintiff
requested and was granted a hearing before an Administrative Law
Judge ("ALJ").[5]   The ALJ conducted a hearing on December 5, 2002,
in Houston, Texas, attended by Plaintiff, his representative, and
a vocational expert ("VE").[6]   At the hearing, Plaintiff amended his
alleged onset date of disability to March 31, 1997, the date he was
last insured for disability benefits.

On January 10, 2003, the ALJ issued her decision, finding that
Plaintiff was not "disabled" within the meaning of the Act and,
therefore, not entitled to receive benefits.[7]   The Appeals Council
denied Plaintiff's request for review,[8] thereby making the ALJ's
decision the final decision of the Commissioner.   See Masterson v.
Barnhart, 309 F.3d 267, 271 (5th Cir. 2002).   Having exhausted his
administrative remedies, Plaintiff brought suit in this court for

---

[2]      Administrative Transcript ("Tr.") 70.  Plaintiff's protective filing
date was July 24, 2001.  Tr. 50.

[3]      Tr. 20, 22-26.

[4]      Tr. 21, 29-32.

[5]      Tr. 33, 36-39.

[6]      Tr. 196-230.

[7]      Tr. 10-18.

[8]      Tr. 3-5.

review of the Commissioner's final decision, under the authority granted by 42 U.S.C. § 405(g).[9]   The parties filed cross-motions for summary judgment shortly thereafter, each claiming entitlement to judgment as a matter of law on Plaintiff's claim.   The motions are presently pending before the court.

## II.  **Legal Standards**

### A.   **Standard of Review**

This court's review of the Commissioner's decision is limited to ascertaining whether the decision is supported by substantial evidence and whether the Commissioner used proper legal standards when evaluating the evidence.  Waters v. Barnhart, 276 F.3d 716 (5th Cir. 2002).   Under this deferential standard of review, the court will affirm the Commissioner's findings if they are supported by substantial evidence in the record.  Masterson, 309 F.3d at 272. Substantial evidence "is more than a mere scintilla and less than a preponderance."  Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000) (citations omitted).   Stated differently, it is the quantity of relevant evidence "a reasonable mind might accept as adequate to support a conclusion."  Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994) (citations omitted).  When reviewing the Commissioner's decision, the court does not reweigh the evidence, determine issues de novo, or substitute its judgment for that of the Commissioner. Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999).

---

[9]    Plaintiff's Complaint, Docket Entry No. 1.

3

**B.    Standard to Determine Disability**

To obtain Title II disability benefits, a claimant must prove he suffers from a disability, which the Act defines as a medically determinable physical or mental impairment that has lasted or can expect to last for a continuous period of at least twelve months and that prevents the claimant from engaging in substantial gainful activity.  42 U.S.C. § 423(d)(1)(A); see also Masterson, 309 F.3d at 271.  To ascertain whether a claimant is disabled, the court utilizes a sequential, five-step process set forth in regulations promulgated pursuant to the Act:

1.   An individual who is presently working and engaging in substantial gainful activity will be found not disabled regardless of medical findings.

2.   An individual without a "severe impairment" will be found not disabled.

3.   An individual whose impairment meets or equals a listed impairment in Appendix 1 of the regulations ("Listings") will be considered disabled without consideration of vocational factors.

4.   If an individual is capable of performing work that he has done in the past, he is not disabled.

5.   If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

20 C.F.R. § 404.1520; see also Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994).  The claimant bears the burden of proof on the first four steps of the sequence, while the Commissioner bears it on the fifth.  Crowley v. Apfel, 197 F.3d 194, 198 (5th Cir. 1999);

4

<u>Brown</u>, 192 F.3d at 498.   The Commissioner may carry the step-five burden by relying on either the Medical-Vocational Guidelines found in Appendix 2 to Subpart P of the regulations ("Grids") or expert vocational testimony or other similar evidence.   <u>Fraga v. Bowen</u>, 810 F.2d 1296, 1304 (5th Cir. 1987).   If the Commissioner makes the requisite showing, the burden shifts back to the claimant to prove he cannot perform the work suggested.   <u>Muse v. Sullivan</u>, 925 F.2d 785, 789 (5th Cir. 1991).

### III.   <u>Analysis</u>

**A.   Plaintiff's motion for summary judgment**

In his motion, Plaintiff candidly admits that he agrees with a majority of the conclusions reached by the ALJ.   Nevertheless, he contends his case should be reversed and remanded because the ALJ's decision was tainted by a specific legal error.   In particular, he asserts the ALJ erred at step five of the disability determination when she "mechanically" applied the age categories in the Grids to classify him as a "younger individual" instead of a "person closely approaching advanced age."   Plaintiff contends that if the ALJ had correctly placed him in the latter category, the pertinent Grid rule would have dictated a finding of "disabled."   Thus, he argues the ALJ's error resulted in substantial prejudice.

The ALJ's formal decision tracked the five-step process.   The ALJ first determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability, March

5

31, 1997.  At step two, the ALJ found that the medical evidence in the record indicated Plaintiff suffered from the severe impairments of chronic neck pain, myelopathy, right leg weakness, and right arm and hand parathesis.  The ALJ determined at step three that these impairments, although severe, did not meet or equal any impairments in the Listings.  At the next step, the ALJ considered Plaintiff's medical records, the opinions of examining and treating physicians, and Plaintiff's testimony, and found that Plaintiff had a residual functional capacity ("RFC") to engage in work of a sedentary level. Based on the oral testimony of the VE during the hearing,[10] the ALJ determined that Plaintiff's restrictions in functional capacity precluded him from performing his past work as a roustabout and oil field technician.

To determine whether Plaintiff was capable of performing other existing jobs despite his physical limitations, the ALJ considered Plaintiff's age, education, and past work experience, in connection with the Grids.  The ALJ noted that Plaintiff was forty-nine years old on the date of his alleged onset of disability.  She therefore categorized him as a "younger individual between the ages of 45 and 49."  The ALJ also found that Plaintiff had more than a high school education but that he possessed no skills from his prior work that

---

[10]     The VE testified that Plaintiff had previously worked as a roustabout and oil field technician.  Tr. 226.  She noted that the roustabout job required heavy exertion and was skilled in nature, while the oil field technician job was light/medium and skilled.  Id.  The VE opined that Plaintiff's present medical impairments prevented him from being able to perform either of these jobs.  Tr. 227-28.

would transfer to a sedentary job.  Having determined Plaintiff's age, education, and RFC, the ALJ applied Rule 201.28 of the Grids, which directed a conclusion of not disabled.

In his motion, Plaintiff contends the ALJ put him in the wrong age category when applying the Grids and, further, that placement in the correct category would have automatically resulted in a finding of disability.  Before reaching this issue, however, the court is obliged to point out a different problem with the ALJ's use of Rule 201.28, which apparently went unnoticed.  In particular, assuming that the ALJ correctly decided Plaintiff's age, education, and RFC, her application of Rule 201.28 was erroneous.

In her decision, the ALJ found that Plaintiff was a "younger individual between ages 45 and 49," who had more than a high school education, no transferable skills from his past jobs, and an RFC to perform a full range of sedentary work.  Based on these threshold determinations, the ALJ concluded that Rule 201.28 was applicable. Assuming the same predicate findings on the vocational factors, the ALJ should have applied Rule 201.21.  See 20 C.F.R. Part 404, Subpart P, Appendix 2, § 201.00.  Table 1 of that regulation covers persons whose RFC limits them to sedentary jobs because of a severe medical impairment.  Rule 201.21 provides that if the claimant is between the ages of 45 and 49, is at least a high school graduate and has no transferable skills from his past skilled or semiskilled work, he or she is not disabled.  Application of Rule 201.21,

rather than Rule 201.28, would have resulted in Plaintiff being placed in the age category of "younger individual age 45-49," i.e., the category that correlated directly with the ALJ's finding.

This issue is of importance because the ALJ relied entirely on the Grid rules to satisfy her step-five burden of proof. In other words, the ALJ opted not to pose one or more hypothetical questions to the VE during the hearing to assess whether Plaintiff could perform any other jobs. The ALJ's incorrect application of the Grid rules--a clear legal error--would normally constitute grounds for reversal of the ALJ's decision. However, in this case, the error was ultimately harmless in nature because the same result would have been obtained through proper application of Rule 201.21, i.e., a finding that Plaintiff was not disabled.

Turning to the issue at hand, Plaintiff contends that the ALJ erred by applying the age categories in a "mechanical" fashion, in contravention of the statutory mandate to refrain from doing so. As stated above, the claimant's age is one of several vocational factors the ALJ considers when determining whether the claimant can perform jobs other than his past relevant work. See 40 C.F.R. § 404.1563(a). For the purpose of applying the Grid, the Act sets forth three age categories for classifying claimants: (1) younger person (under age fifty), (2) person approaching advanced age (age fifty to fifty-four), and (3) person of advanced age (age fifty-five and over). Id. § 404.1563(b)-(d). Here, the ALJ found at step five that Plaintiff was forty-nine years old at the time he

8

allegedly became disabled.  Therefore, the ALJ classified Plaintiff
as a "younger person" without further discussion.

Plaintiff was born on November 18, 1947, and, thus, was forty-
nine years old as of March 31, 1997, the date he was last insured
for disability benefits.[11]  Notwithstanding the fact that he was
over seven and one half months away from ascending into the age
category of "person approaching advanced age," Plaintiff contends
that the ALJ erred by not putting him in that group when applying
the Grid.  In support of his contention, Plaintiff points to one of
the Act's implementing regulations, which provides, in pertinent
part:

> We will use each of the age categories that applies to
> you during the period for which we must determine if you
> are disabled.  We will not apply the age categories
> mechanically in a borderline situation.  If you are
> within a few days to a few months of reaching an older
> age category, and using the older age category would
> result in a determination or decision that you are
> disabled, we will consider whether to use the older age
> category after evaluating the overall impact of all the
> factors in your case.

20 C.F.R. § 404.1563(b).  Plaintiff asserts that he was only "a few
months" away from turning fifty years old when his disability arose
and that this presented a borderline situation within the meaning
of the regulation.  Plaintiff posits that, all things being equal
with regard to his other vocational factors, had the ALJ classified

---

[11]     Social Security Ruling 83-10 provides that when the claimant last
meets the insured status requirement before the date of adjudication, the oldest
age to be considered when applying the Grids is the person's age at the date last
insured.  Because Plaintiff was last insured for disability benefits on March 31,
1997, her age as of that date is determinative.

him as an individual "closely approaching advanced age" rather than mechanically putting him in the "younger person" age category, Rule 201.14 would have directed a finding of disability.

The critical issue, therefore, is whether Plaintiff presented a "borderline situation." The court concludes he did not. Section 404.1563(b) provides that a borderline situation is one in which the claimant is within "a few days or months" of the next category. Beyond these general parameters, the regulations provide no bright-line rule for determining when this situation exists. Indeed, the absence of such is purposeful, as the Commissioner explained in Social Security Ruling 83-10: "No fixed guidelines as to when a borderline situation exists since such guidelines would themselves reflect a mechanical approach."

Plaintiff asks the court to find that a time period of over seven and one half months qualifies as "a few months." The court simply cannot accept Plaintiff's strained interpretation of Section 404.1563. The regulation makes clear that its terms extend only to persons who are on the verge of ascending into the next highest age category, not to every individual who is within one year of doing so. A perusal of existing case law supports the court's decision that a claimant who is over seven and one half months away from the next age category is not in a borderline situation. See Underwood v. Bowen, 828 F.2d 1081, 1082 (5th Cir. 1987) (a claimant ten months away from turning fifty years old was not a borderline situation); Lambert v. Chater, 96 F.3d 469, 470 (10th Cir. 1996) (claimant seven

months away not in a borderline situation); Russell v. Bowen, 856 F.2d 81, 84 (1988) (seven months not within borderline); compare Kane v. Heckler, 776 F.2d 1130, 1132-33 (3rd Cir. 1985) (forty-eight days a borderline situation); Hill v. Sullivan, 769 F. Supp. 467, 471 (W.D.N.Y. 1991) (just over three months within the borderline). Because Plaintiff was not in a borderline situation, the ALJ did not err in placing Plaintiff in the "younger individual" category without a detailed discussion in her decision.[12]

Second, Section 404.1563(b) makes clear that the Commissioner has discretion to determine whether a situation is "borderline." Harrell v. Bowen, 862 F.2d 471, 479 (5th Cir. 1988); Underwood, 828 F.2d at 1082. As the Sixth Circuit astutely noted: "The fact that age categories are not to be applied mechanically . . . obviously does not mean that a claimant must be moved mechanically to the next age category whenever his chronological age is close to that category." Crady v. Sec. of Health and Human Servs., 835 F.2d 617, 622 (6th Cir. 1987). Because the record clearly shows Plaintiff was forty-nine years old on March 31, 1997, and that his age fit within the "younger individual" category, the court cannot say the ALJ erred when she exercised her discretion to use that category when applying the Grids. Therefore, the court finds the ALJ's decision

---

[12]    In support of his claim, Plaintiff cites to Garner v. Heckler, 735 F.2d 1291, 1292 (11th Cir. 1984), in which the Eleventh Circuit held that the district court's mechanical application of the age categories constituted error. However, the plaintiff in Garner was only two months away from turning fifty. As the cases cited above demonstrate, a period of two months clearly presents a borderline situation. Thus, Garner is distinguishable from the instant case, and Plaintiff's reliance on that case is misplaced.

is supported by substantial evidence.

Plaintiff also contends the ALJ erred by failing to make an express determination in her decision as to whether his case was a borderline situation and that this constituted an abrogation of the ALJ's duty to fully develop the record.  He asserts that the ALJ's failure in this regard precludes meaningful review by this court.  This argument must be rejected.

While it is true that an ALJ owes a disability claimant a duty to develop the record fully and fairly so as to ensure the decision is based on sufficient facts, <u>Carey v. Apfel</u>, 230 F.3d 131, 142 (5th Cir. 2000), there is absolutely no basis in the record to conclude the ALJ abrogated her duty in that regard.  The transcript reveals that the ALJ questioned Plaintiff extensively at the hearing about relevant topics, including his education, past work, impairments, surgical procedures, level of pain, and daily routine.  Moreover, the ALJ afforded Plaintiff and his representative an opportunity to add comments to the record at the end of the hearing.  Plaintiff does not contend in his motion that the ALJ failed to develop the record by neglecting to investigate fully the nature and extent of his impairments or restrictions.  Nor does he argue that the ALJ erroneously rejected without explanation any probative evidence, such as his testimony during the hearing or the opinions of his treating physicians.  In short, he has presented no factual basis upon which to find that the ALJ failed to develop the record.

Although the ALJ did not discuss in her decision Plaintiff's

12

age other than to find he was a "younger individual," there was no need to do so because, as explained above, Plaintiff was not in a borderline situation.  Plaintiff points to no legal authority for the proposition that the ALJ must give a detailed written analysis in her decision explaining every finding of fact, including the rather routine determination of a claimant's age.

**B.   Defendant's motion for summary judgment**

Defendant asserts that she is entitled to summary judgment on Plaintiff's claim because the ALJ used proper legal standards when evaluating the evidence and because her decision to deny benefits was supported by substantial evidence.  The court agrees.

The ALJ concluded at step five of the disability determination that Plaintiff was capable of performing other jobs that existed in significant numbers in the economy.  In reaching this conclusion, the ALJ assessed the vocational factors of age, education, and RFC, and applied the Grid rules, as permitted by the regulations.

The ALJ first determined that Plaintiff's RFC permitted him to perform a full range of sedentary work.  She based this finding on a review of Plaintiff's objective medical records up through March 31, 1997, as well as Plaintiff's subjective testimony about the symptoms of his ailments and functional limitations.  Plaintiff has not challenged the ALJ's determination of his RFC.

A sedentary job is one that mostly requires sitting, as well as occasional standing and walking when necessary to complete a job

13

task.  20 C.F.R. § 404.1567(b).  In addition, a person must be able to lift at least ten pounds and carry objects such as docket files, ledgers, and small tools on occasion.  Id.  The record supports the ALJ's determination that Plaintiff retained the functional capacity to perform a sedentary job.

Plaintiff's medical records dating before March 31, 1997, show he was status post two operations on his spinal cord, one in 1989 the other in 1990.  In 1989, he underwent a cervical laminectomy to treat a compression of his cervical spinal cord.[13]  He was given a post-operative diagnosis of spinal stenosis with spondylosis and herniated discs.[14]  After this operation, Plaintiff complained of increased numbness in his right arm.[15]  Therefore, in October 1990, he had another procedure performed on his spinal cord.[16]  Subsequent to this operation, Plaintiff had periodic check-ups with his treating physician, Philip Peter, M.D. ("Dr. Peter").[17]  In a report from February 1992, Dr. Peter noted that Plaintiff still complained of numbness in the fourth and fifth fingers of his right hand, as well as weakness in his right leg due to residual myelopathy.[18]  He noted, however, that these symptoms were static and that Plaintiff

---

[13]    Tr. 162-65.

[14]    Tr. 162.

[15]    Tr. 153.

[16]    Tr. 147-48, 153-54.

[17]    Tr. 143-46.

[18]    Tr. 140.

14

had not complained of any new problems.[19]  Thereafter, Plaintiff saw Dr. Peter only sporadically, receiving a check-up roughly once per year from 1992 to 1998.[20]  Each progress report from the check-ups noted that Plaintiff's condition had stayed the same.

In addition to Plaintiff's medical records, the ALJ also took into consideration Plaintiff's testimony when assessing his RFC. At the hearing, Plaintiff opined that he could sit for roughly two to three hours before moving around, stand for two to three hours in an eight-hour workday, and lift approximately twenty pounds.  He also testified that he was capable of walking short distances (in his opinion up to one mile) without experiencing pain in his right leg.  Plaintiff admitted that he had not taken any pain medication before 1997 and that his condition worsened only after 1997.[21]  In his decision, the ALJ found Plaintiff's testimony about his subjective symptoms and functional limitations only partially credible.  The ALJ noted the inconsistency in Plaintiff's testimony about his degree of pain, pointing out that while Plaintiff averred he was in constant pain, the record showed that he only saw his physician infrequently and, further, that Plaintiff had readily admitted that he had not taken any pain medication prior to 1997. The court finds that, taken together, the medical records from the

---

[19]   Id.

[20]   Tr. 137-39.

[21]   Tr. 221.

relevant time period and Plaintiff's testimony from the hearing constitute more than a scintilla of evidence that he retained the functional capacity to perform a full range of sedentary work.

Substantial evidence also supports the ALJ's factual findings as to Plaintiff's age.  The ALJ determined Plaintiff was forty-nine years old on the date he was last insured for disability benefits and, thus, placed him in the "younger individual" age category.  As analyzed above, the ALJ did not err when making this determination. The ALJ also found that Plaintiff possessed greater than a high school education but that he had no skills from his past relevant work that were transferable to jobs he could perform with his limitations.  Both of these findings are supported by substantial record evidence.[22]

Having determined the relevant vocational factors, the ALJ was permitted to use the Grid at step five because the medical evidence indicated that Plaintiff suffered only from exertional limitations. See Watson v. Barnhart, 288 F.3d 212, 216 (5th Cir. 2002) (quoting Crowley, 197 F.3d at 199) (recognizing that application of the Grid rules is proper only when it is shown that the claimant suffers solely from exertional impairments).  Although the ALJ applied the incorrect Grid rule, this error was harmless because Plaintiff was

---

[22]    With regard to education, Plaintiff testified at the hearing that he had graduated from high school and attended college for a period of time.  Tr. 205.  As to transferable skills, the VE testified in response to a hypothetical question posed by the ALJ that Plaintiff did not have any skills from his past relevant work that would transfer to a sedentary job.  Tr. 227.

not unduly prejudiced, i.e., application of the proper rule would have resulted in the same determination that he was not disabled. Consequently, the ALJ's decision finding Plaintiff not disabled is supported by substantial record evidence.

## IV.  **Conclusion**

In conclusion, the court finds that the ALJ abided by correct legal standards and that her decision is supported by substantial evidence of record.  Thus, Defendant is entitled to judgment as a matter of law on Plaintiff's disability claim.  Defendant's motion for summary judgment is **GRANTED** and Plaintiff's motion for summary judgment is **DENIED.**

**SIGNED** at Houston, Texas, this 15ᵗʰ day of August, 2005.

Nancy K. Johnson
United States Magistrate Judge